Curia, per O’Neall, J.
When this case was called, the Attorney General moved to strike it from the docket, on the ground, thati an order attaching an Attorney at law for a contempt until a fine be paid, is not the subject of appeal. The case of King v. Davison, was cited and relied on. In it, the defendant was fined three several times for using improper expressions in Court, in the presence of the Judge. The power of the Judge to fine for the contempt, was collaterally drawn in question; and it is asserted by all the Judges. About it, I entertain no doubt. I presume all my brethren will concur in C. J. Abbott’s expression, as to the power of. the Judge to fine for a contempt, when he- said, *339 “ that he has the power to do so, I can entertain no doubt; no lawyer can doubt the power of every Court to fine for contempt.” But, notwithstanding this undoubted power, still, where it is exercised, every citizen has the right to appeal. It was said in Pinckney v. Hennegan & Jones, “ that is what is guaranteed to every one by the constitutional provision requiring the Judges to meet and sit for the purpose of hearing all motions which may be made for new* trials, and in arrest of judgment, and such points of law may be submitted to them.”
Notwithstanding this right of appeal, still (as was decided in the case of Pinckney v. Hennegan & Jones,) every appeal does not necessarily, in all cases, operate as a supersedeas. In the case of a contempt committed in the presence of the Court, as in this case, if the sentence had been instant imprisonment, no appeal could have superseded it; it must have been executed. The same result would have followed, in the case of a fine where instant payment was directed to be enforced. But when, as here, there was no time fixed for payment, or for the issuing of the attachment to compel its payment, the appeal, though not operating as a supersedeas, may be considered as, by the consent of the Judge, suspending all proceedings, until the final hearing of the appeal. We all, for these reasons, agreed that the case should not be struck from the docket, but that the defendant should' be heard on his appeal.
This has been done, and we all agree, not only as-to the power of the Judge to fine for a contempt committed by an attorney, in the use of improper expressions towards another-attorney, in the argument of a cause in the presence of the Court, but also, that the Judge may or not, in the exercise of his legal discretion, use that power, and that the punishment to follow its use is altogether discretionary with him. Extraordinary cases might, but probably never will, occur, in which this Court might hold, that the power to attach for such a supposed contempt had been improperly used. The proceeding by rule is the result of the provision contained in the Act of the Legislature, passed in 1811. It grew out of the commitment, by Mr. J ustice Grimke, of the constables, at Newberry, in 1807, who were found absent from their posts, without requiring them to shew cause. Its provision, that no one shall be imprisoned without hearing him, necessarily, in a case like the present, makes the proceeding by rule proper. It has the sanction of a well settled practice, and is prudent, as affording cooling time and an opportunity for the interference of friends.
That the Judge, in the case beforeus, had no other alternative than to fine the defendant, is so perfectly, manifest, from the papers laid before us, that it is hardly necessary to- *340 say a word about it. Let it be conceded, as the defendant supp0ses, that Mr. Yeadon was the assailant in the unbe'coming war of words between them, still, on recurring to his return to the rule, it will be seen he made to the Court every atonement in his power, when he said, “ this respondent again utterly disclaiming all intentional disrespect to the Court or its presiding magistrate, and, on the contrary, professing and feeling the highest respect for both — for the one ■officially, and for the other, both officially and personally, respectfully apologises for what he felt constrained to do by more than common aggravation, and he humbly hopes that much will be pardoned to human infirmity, and also to manly and professional feelings, roused to the vindication of personal and professional honour.” After this, nothing was left to the Judge but, in reference to him, to extend the forgiveness prayed — though here I must be permitted to remark, in reference to the closing words of the return above cited, that I think neither “personal or professional honour” was ever vindicated by rough words used in a Court House.
The defendant deprived the Judge of the pleasant duty of extending the same clemency to him which he did to his adversary, by putting himself in an attitude of justification throughout; his disavowal of disrespect to the Court was only made after the Judge had, in delivering his judgment, pointed to the entire absence of apology to the Court for the rudeness of which he had been guilty. But it is unnecessary further to refer to the facts of this unpleasant affair. The Judge’s discretion was. we think, properly exercised. He regretted, as well as the whole court now regret, that one of the oldest members of the Bar, distinguished for his talents, •and remarkable for his success as an advocate, should have evoked the necessity of inflicting punishment for a contempt. Still the example was the more necessary and proper.
The withdrawal, by the defendant, of his additional .grounds of appeal, so improperly worded and presented, and the ample and satisfactory apology by him submitted to this Court, gives us reason to hope that reflection will cause “ good .and not evil” to come out of this, to the Court, unpleasant ■exercise of the power of punishing for a contempt.
The motion is dismissed.
Richardson, Evans, Wabdlaw and Frost, JJ. concurred.